# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DEIANDRA S. AMADOR,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. CIV-21-112-SPS |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of the Social** | ) |
| **Security Administration,**[1] | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

The claimant Deiandra S. Amador requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human*

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was twenty-nine years old at the time of the administrative hearing (Tr. 63, 195). She completed tenth grade and has no past relevant work (Tr. 40, 216). The claimant alleges she has been unable to work since her application date of August 9, 2018, due to chronic hyper hydrosis, chronic anxieties, chronic multiple joint pain, thyroid nodule, ANA positive (auto immune disease), benign hematuria, vitamin D deficiency, chronic mood disorder, chronic depression, hypothyroidism (Hashimoto's), GERD, allergic rhinitis, migraines, osteoarthritis, irritable colon, insomnia, constipation, dysthymic disorder, chronic fatigue, and bipolar disorder (Tr. 30, 215).

**Procedural History**

The claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on August 9, 2018. Her application was denied. ALJ James Stewart conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated March 4, 2020 (Tr. 28-42). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a range of sedentary work as defined in 20 C.F.R. § 416.967(a), with the additional qualifications that she could only occasionally stoop, crouch, crawl, kneel, balance, and climb ramps/stairs, and that she could never climb ladders/ropes/scaffolds. As to her mental impairments, he found that she could perform unskilled work of simple and routine tasks with routine supervision that required only that she be able to understand, remember, and carry out simple instructions. Additionally, he found she could maintain concentration and persist for two-hour periods during the workday with normally scheduled work breaks between periods. However, he found she should only work at jobs where changes in routine occur infrequently, and where workers are usually given notice and an opportunity to adjust if changes are made. He found she could relate to supervisors and co-workers on a superficial and work-related basis and that she could have occasional contact with co-workers and supervisors, and that she could adapt to a work situation where interpersonal contact was incidental to the work performed, but that she could have no contact with the general public (meaning interaction with the general public is not part of the job duties, and any contact would, in most cases, be incidental and superficial) (Tr. 34). The ALJ thus concluded that although the claimant had no past relevant work to return to, she was nevertheless not disabled because there was other work that she could perform, *e. g.*, electronics worker, printed circuit board cleaner, and document scanner (Tr. 40-41).

## Review

The claimant contends that the ALJ erred: (i) because she cannot perform the job of document scanner, and (ii) by failing to properly assess the medical opinion of her counselor as to her mental impairments. The Court finds these contentions unpersuasive for the following reasons, and the decision of the Commissioner should therefore be affirmed.

The ALJ determined that the claimant had the severe impairments of migraine (unspecified, not intractable, without status migrainosus), obesity, fibromyalgia, anxiety, schizoaffective disorder, bipolar type, attention deficit hyperactivity disorder, and post-traumatic stress disorder, as well as the nonsevere impairments of cannabis use disorder by history, unspecified asthma, and segmental and somatic dysfunction of the cervical and lumbar regions (Tr. 30-31). The medical evidence related to the claimant's impairments reflects that she received both physical and mental health treatment largely through the Muscogee Creek Nation. As to her mental impairments, notes reflect the claimant stopped her mental health medications in June 2018, two months prior to her application date, at which time she reported having significant anxiety (Tr. 425). The following month, she was admitted to the hospital for a possible suicide attempt after becoming overwhelmed with family health problems and losses (Tr. 498, 1205-1206). At a follow-up mental health appointment, the claimant reported leaving against medical advice after they could not find an inpatient bed for her and only placed her on suicide watch (Tr. 498). In August 2018, the claimant did not feel like her medications were working effectively and she reported continued anxiety, and on September 7, 2018, the claimant reported her depression was

improved and that she received benefits from her medications (Tr. 538, 1062). At that time, her diagnosis was listed as major depressive disorder, recurrent, moderate (Tr. 1063). On September 21, 2018, the claimant presented for a psychiatric diagnostic evaluation and appeared disheveled, had avoidant eye contact, and was evasive and mistrustful (Tr. 558, 1072-1073). She appeared to have an impairment of attention/concentration, as well as a mild impairment in the ability to make reasonable decisions (Tr. 559). Her diagnoses included schizoaffective disorder and ADHD (Tr. 559).

On October 3, 2018, Dr. Kathleen Ward conducted a mental status examination of the claimant (Tr. 1098-1102). Dr. Ward noted that the claimant was "marginally clean," that she spoke at barely above a whisper, and that she pulled her shirt over her head and spoke through the cloth of her shirt (Tr. 1100). The claimant brought a large packet of medical records which Dr. Ward declined to review, noting they were "unvetted," and the claimant was displeased with this (Tr. 1100). Dr. Ward found the claimant to be a marginally unreliable historian, but that there was not significant evidence the claimant was incompetent to handle any funds awarded (Tr. 1101). Additionally, she noted that the claimant did not participate in a meaningful way with some of the questions, making diagnosis difficult to narrow down, and that the claimant denied any mood other than depressed (Tr. 1101). She assessed the claimant with "social v generalized anxiety disorder v agoraphobia," "borderline personality disorder v. traits," "major depressive disorder (recurrent) v. unspecified bipolar disorder," and cannabis use disorder by history (Tr. 1101).

On October 19, 2018, Dr. Harold DeLaughter conducted a physical exam of the claimant, which was mostly within normal limits (Tr. 1110-1116). She again brought her stack of medical records and refused to proceed until he had reviewed them, which he did (Tr. 1110). The claimant did not cover her face with her shirt while speaking at this appointment.

In January 2019, the claimant discontinued her psych meds due to planning a pregnancy (Tr. 1388). She gave birth early (at 32.2 weeks) due to preeclampsia but was pumping and breastfeeding her baby after giving birth, and so did not resume mental health medications (Tr. 67, 1414-1435). In December 2019 at an appointment for back pain, knee pain, and a headache, she was positive for anxiety, but negative for depression and insomnia (Tr. 1408-1410).

The claimant's counselor, Carla Rogers, LCSW, completed two assessments as to the claimant's mental impairments (Tr. 1117-1125, 1286-1293). The first one was completed on October 9, 2018, one month following Dr. Ward's evaluation. At that time, she had been treating the claimant since June 2018, and she indicated the claimant's diagnoses included severe depression, severe anxiety, mood disorder, bipolar disorder, and suicidal thoughts (Tr. 1117-1118). In a "check-box form," she indicated that the claimant had either "no useful ability to function" or "substantial loss of ability to function" in all but one of over twenty mental abilities needed to work, including carrying out very short and simple instructions, and carrying out detailed written or oral instructions (Tr. 1120-1121). Additionally, she indicated that the claimant had "extreme" or "seriously limited or marked" limitations of over fifty mental functions including in interacting with co-

workers and supervisors, and in maintaining concentration, persistence, and pace (Tr. 1122-1123). She indicated the claimant would be absent four or more days per months from work, and that the claimant's impairments had existed since 2005 (when the claimant was fifteen years old) (Tr. 1117, 1124). She stated that the claimant had never been able to maintain full-time, gainful employment due to ongoing lifetime symptoms of mental health (Tr. 1124).

On January 23, 2020, Ms. Rogers completed the second report as to the claimant. At that time, she indicated that the claimant's impairments were depression, anxiety, and bipolar disorder, and that treatment was for stabilization and to improve function, and she listed no prescribed medications (Tr. 1286). In this report, she indicated fewer signs and findings as to the claimant's impairments (Tr. 1287). Additionally, she checked boxes indicating that the claimant had "substantial loss of ability to function" or "needs some help" as to certain abilities, but no boxes under "no useful ability to function" (Tr. 1288). Likewise, she indicated no "extreme" limitations related to mental functioning, instead checking boxes under "seriously limited or marked" or "needs some help, High Moderate" (with one remaining checked as "limited but satisfactory, Low Moderate") (Tr. 1290-1291). At this time, she indicated that the claimant's symptoms had existed since February 14, 2012 (Tr. 1292). While she indicated that the claimant's symptoms might result in unscheduled days off, she did not indicate how many days per month the claimant was likely to be absent (Tr. 1292).

State reviewing physicians determined initially and upon reconsideration that the claimant retained the capacity to perform work where interpersonal contact is incidental to

the work performed, that she could perform simple tasks that are learned by rote with variable and little judgment required, that she could work under supervision that is simple, direct, and concrete, and that she can adapt to a work situation, but that she could not relate to the general public (Tr. 97, 114). In making these findings, the physicians noted marked limitations in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public, as well as several additional moderate limitations (Tr. 95-96, 113-114).

At the administrative hearing, the ALJ posited a hypothetical matching the above-listed RFC (Tr. 76). In response, the vocational expert ("VE"), indicated that such a person could perform the jobs of electronics worker, DICOT § 726.687-046; printed circuit-board screener, DICOT § 76.684-110; and document scanner, DICOT § 2493587-018 (Tr. 76). She indicated that all of these jobs had a specific vocational preparation ("SVP") number of 2 (Tr. 76). In response to questioning from the claimant's representative, she also stated that all three jobs had a reasoning level of 2, although the claimant's representative correctly pointed out that the document scanner position actually has a reasoning level of 3 (Tr. 82-84).

In his written opinion at step three, the ALJ found that the claimant had moderate limitations in the four broad functional areas, which did not meet any of the Listing requirements (Tr. 33-34). At step four, the ALJ thoroughly summarized the claimant's hearing testimony from both administrative hearings, as well as the medical evidence of record. As relevant to this appeal, the ALJ noted the claimant's treatment history with Ms. Rogers, as well as her medication management history with her psychiatrist during the

same time, including that she went off psychotropic medications in 2019 in order to get pregnant (Tr. 36-37). He further noted the Ms. Rogers's treatment notes only went through September 2018, and that the claimant's most abnormal mental status exam was the September 21, 2018 at which she was disheveled and had an attention/concentration impairment and a mildly impaired ability to make reasonable decisions (Tr. 38). He contrasted this with Dr. Ward's exam one month later, noting that the only abnormal parts were the claimant speaking with her shirt over her face and being a marginally unreliable historian (Tr. 38-39). He further noted that the claimant testified she had been uncomfortable discussing her mental health and did not have such problems discussing her physical health, and he opined that it was "certainly a childish response but not necessarily indicative of severe mental symptoms" (Tr. 39). He then noted the claimant's mood lability, anxiety, difficulty interacting with others, poor stress response, poor response to change, fatigue, and concentration and memory deficits as support for the RFC listed above (Tr. 39). As to the opinion evidence, the ALJ found the state reviewing physician opinions persuasive, as well as consistent with the claimant's testimony regarding her mental impairments and in light of her mental health treatment (Tr. 39-40). He found both of Ms. Rogers's opinions to be unpersuasive (Tr. 40). He noted that her treatment notes consisted of only three sessions, during which she noted no abnormal mental status findings or observations (and that she was smiling, laughing, and joking), and that the claimant reported improvement at their last appointment (Tr. 40). He thus found her assessments unsupported by her treatment records. Furthermore, he pointed to the records from the claimant's psychiatrist which included only one abnormal exam (September 21, 2018), and

that Dr. Ward's only abnormal findings during this same time were: (i) being a marginally unreliable historian, (ii) speaking with her shirt over her mouth, (iii) having trouble with serial 7s, and (iv) only recalling two of three items after five minutes (Tr. 40, 1098-1101). He further pointed out that more recent mental status exams were normal despite the fact she had discontinued psychotropic medication in January 2019 (Tr. 40). The ALJ then proceeded to step five, finding that the claimant was not disabled because she could perform the jobs of electronics worker, printed circuit board cleaner, and document scanner (Tr. 41). Despite the correction at the administrative hearing, the ALJ indicated that the document scanner job had an SVP of 2, as did the other two jobs identified; he did not list the *reasoning* levels for any of the jobs (Tr. 41).

The claimant asserts that the ALJ's reasons for rejecting Ms. Rogers's opinions are unsupported by the law. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence

in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Court finds that the ALJ's treatment of Ms. Rogers's opinions here was appropriate in analysis as to consistency and persuasiveness. At step four, the ALJ noted her assessment and contrasted it both with her own treatment notes as well as the treatment notes in the record that were both close in time and subsequent to Ms. Rogers's treatment notes. He further discussed the persuasiveness of her opinion, noting that it was not supported by or consistent with her own treatment notes or records from the claimant's psychiatrist, or from Dr. Ward's assessment (Tr. 40). On appeal, the claimant nevertheless contends that the ALJ failed to account for her difficulty being around others, poor insight and judgment, and significant limitations with concentration, persistence, and pace. However, the ALJ specifically stated how he accounted for each of these limitations; he simply did not find them disabling, as is the claimant's contention. Thus, the ALJ thoroughly considered Ms. Rogers's opinion and gave reasons for not including further limitations in her RFC. And the claimant has pointed to no medical documentation not

addressed by the ALJ that *does* provide further limitations. Because she points to no evidence other than her own assertions, the Court declines to find an error here. *Cf. Garcia v. Astrue*, 2012 WL 4754919, at *8 (W.D. Okla. Aug. 29, 2012) ("Plaintiff's mere suggestion that a 'slow' gait might adversely affect his ability to perform the standing and walking requirements of light work is not supported by any authority."). Thus, the ALJ's opinion was sufficiently clear for the Court to evaluate it. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case."). *See also Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

The claimant further asserts that even if the ALJ did properly consider Ms. Rogers's opinion, the unskilled jobs identified at step five *do not* account for her mental RFC limitations because the document scanner job is beyond her RFC with a reasoning level of 3, *see* DICOT § 249.587-018, and the ALJ made no separate finding that the remaining jobs existed in significant numbers. A reasoning level of 3 is defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *See* DICOT § 249.587-018. The reasoning levels for jobs in the DOT best identify the level of simplicity (or, conversely, complexity) associated with the job. *See Cooper v. Barnhart,* 2004 WL 2381515, at *4 (N.D. Okla. Oct. 15, 2004) ("The reasoning level, as identified by Plaintiff, appears more similar to whether or not a claimant

has a limitation to performing only simple tasks.") [citations omitted]. As to this job, the Court agrees that there is a conflict here which the ALJ failed to identify. *Hackett v. Barnhart,* 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that a limitation to "simple and routine work tasks" is "inconsistent with the demands of level-three reasoning.").

The remaining jobs, electronics worker and printed circuit board cleaner, however, have a reasoning level of 2. *See* DICOT §§ 726.687-046, 726.684-110. A reasoning level of two requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." *See* DICOT §§ 726.687-046, 726.684-110. A reasoning level of two *is consistent* with performing simple tasks, although a reasoning level of three is not, and that other courts have reached the same conclusion. *See Hackett*, 395 F.3d at 1176 ("This level-two reasoning appears more consistent with Plaintiff's RFC [limiting her to simple and routine work tasks.]"); *Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) ("Ms. Stokes' second argument is that the ALJ's limitation to simple, repetitive and routine work should be construed as a limitation to jobs with a reasoning-level rating of one. We disagree."). *See also Couch v. Berryhill*, 2017 WL 1194344, at *4 (E.D. Okla. March 13, 2017) ("In accordance with the court's findings in *Hackett*, a restriction to simple work is consistent with this reasoning level [of 2]."); *Goleman v. Colvin*, 2016 WL 3556958, at *4 (W.D. Okla. May 6, 2016) (where RFC limited claimant to "simple, routine, repetitive instructions," [t]he ALJ properly relied on the jobs identified by the VE with a reasoning level of two.").

The Court thus finds that the identification of the document scanner job is harmless error because there are still two jobs identified that do not pose a conflict. *See Stokes,* 274 Fed. Appx. at 684 (finding that any error on whether claimant could perform jobs was harmless error since there were still two jobs claimant could perform and no "reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country."). The claimant contends, however, that the ALJ failed to make the requisite findings that the remaining twos jobs, without including the document scanner job, exist in significant numbers. The VE testified that there were 19,600 electronics worker jobs and 48,000 printed circuit board cleaner jobs nationally (Tr. 76), or 67,600 jobs total.

The determination that work can be performed in significant numbers is considered case-specific, and "the issue of numerical significance entails many fact-specific considerations requiring individualized language as applied to a particular claimant's factual situation." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (*quoting Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992)). The Tenth Circuit has held that this finding is not limited to local or regional numbers but is instead a determination of whether work exists in significant numbers in the regional or national economy. *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009). Here, the Court is persuaded that 67,600 jobs available nationally for the remaining jobs of electronics worker and printed circuit board cleaner is significant. *See Fox v. Colvin*, 2015 WL 5178414, at *4 (W.D. Okla. Sept. 3, 2015) ("The *Rogers* [*v. Astrue*, 312 Fed. Appx. 138, 142 (10th Cir. 2009)] decision came out the same year as *Raymond*, and that court implicitly found, as a

matter of law, without engaging in a multi-factor analysis, that 11,000 jobs in the national economy is significant. The Court is persuaded by *Rogers* and finds that 32,000 utility tractor jobs in the national economy is also significant."). *See also Stokes*, 274 Fed. Appx. at 684 (where the two remaining available jobs cited by the ALJ, there were 11,000 jobs regionally and 152,000 nationally, "we do not believe any reasonable factfinder could have determined that suitable jobs did not exists in significant numbers in either the region where Ms. Stokes lives or several regions of the country.").

When all the evidence is taken into account, the conclusion that the claimant could perform a reduced range of sedentary work is supported by substantial evidence. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of h[er] RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [s]he can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). The ALJ specifically noted every medical record available in this case after the alleged onset date, gave reasons for his RFC determination and ultimately found that the claimant was not disabled. This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (citations omitted). Accordingly, the decision of the Commissioner should be affirmed.

**Conclusion**

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 1st day of August, 2022.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**